ISHEE, J.,
for the Court:
¶ 1. On November 16, 2005, the DeSoto County Chancery Court granted John and Patricia Bowen a divorce based on irreconcilable differences. On May 4, 2010, the chancery court found John in contempt for failure to pay child support and increased his child-support obligation. The chancery court awarded Patricia attorney’s fees of $10,000 and held Patricia was not in contempt of court. Aggrieved, John appeals the chancery court’s judgment. With regard to the award of attorney’s fees, we reverse and remand in part for further proceedings consistent with this opinion. Finding no further error, we affirm as to all other issues.
FACTS AND PROCEDURAL HISTORY
¶ 2. John and Patricia were married on October 15, 1998, in Shelby County, Tennessee. Their twin children were born on April 2, 1991. On November 16, 2005, the chancery court granted a divorce based on irreconcilable differences. At that time, John and Patricia were granted joint physical and legal custody of their children. Pursuant to the final decree of divorce, John’s visitation included every other weekend, one full week each month, and four weeks during the summer.
¶ 3. John was ordered to pay $300 per month in child support and $150 per month for one-half of the children’s medical-insurance premiums. The payments were due at the first of each month. John was also ordered to maintain a $100,000 life-insurance policy for himself, naming the children as irrevocable beneficiaries until they were emancipated. Both parties were ordered to share the cost of the children’s school expenses and extracurricular activities. John paid his monthly child-support payments and reimbursements for the children’s medical-insurance premiums through the DeSoto County Chancery Clerk’s Office. The chancery clerk charged a $5 administrative fee each time child-support payments were forwarded to the recipient.
¶4. On March 7, 2006, Patricia filed contempt petition based on John’s failure to pay child support and his portion of the children’s medical-insurance premiums. Patricia later filed an amended petition on June 30, 2008. John filed a counter-petition for contempt alleging Patricia had interfered with his visitation with the children. Thereafter, a hearing was held on April 9, 2009. After hearing testimony, *169 the chancellor found John in contempt for failure to pay child support and his portion of the children’s medical-insurance premiums. The chancery court also modified the final decree of divorce and increased John’s monthly child-support payments from $300 to $500 per month. The chancery court awarded Patricia $10,000 in attorney’s fees and found Patricia was not in contempt of court.
¶5. Aggrieved, John alleges the chancery court erred by (1) failing to find the Mississippi Department of Human Services (DHS) was a necessary party; (2) finding him in contempt of court; (3) increasing his child-support obligation; (4) failing to find Patricia in contempt of court; and (5) granting Patricia’s request for $10,000 in attorney’s fees.
STANDARD OF REVIEW
¶ 6. The standard of review in domestic-relations cases is limited. Arrington v. Arrington, 80 So.3d 160, 164 (¶ 11) (Miss.Ct.App.2012) (citing In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss.2010)). “The findings of a chancellor will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous!,] or an erroneous legal standard was applied.” Id. (internal quotation omitted). We review questions of law de novo. Id.
DISCUSSION
I. DHS as a Necessary Party
¶ 7. John contends the chancery court erred by failing to find DHS was a necessary party. DHS was originally named as a party in the contempt proceedings from early 2006 through 2007. John initially listed DHS as a party defendant, claiming DHS wrongfully suspended his driver’s license due to nonpayment of child support. Beginning in 2008, however, DHS was no longer listed as a party in the contempt proceedings. John argues the chancery court’s judgment should be reversed and this case remanded for further proceedings to include DHS as a party.
¶ 8. Mississippi Rule of Civil Procedure 19(a)(1) provides: “A person ... shall be joined as a party in [an] action if ... in his absence complete relief cannot be accorded among those already parties!.]” Mississippi Rule of Civil Procedure 21 further provides: “Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.”
¶ 9. The underlying issue in the present case is John’s failure to pay child support and his portion of the children’s medical-insurance premiums. Pursuant to the chancery court’s order, John was required to pay $300 per month in child support and $150' per month in medical-insurance premiums. These amounts, as indicated by the chancery court’s order, were undisputed. We cannot say DHS is necessary for complete relief to be accorded. DHS has not participated in any proceeding since 2008. Moreover, DHS could not have offered any further testimony regarding John’s nonpayment of child support that had not already been established.
¶ 10. In addition, John testified that once he became current on his child support payments, DHS reinstated his driver’s license, and after DHS reinstated his driver’s license, he began making his child-support payments through the chancery court, not DHS. This supports the conclusion that DHS was not a necessary party to the contempt proceedings. Accordingly, this issue is without merit.
*170 II. John’s Contempt of Court
¶ 11. John contends the chancery court erred by finding him in contempt for failure to pay child support. Specifically, he argues that because he always made his monthly payments before they were thirty days delinquent as provided by Mississippi Code Annotated section 93-11-71 (Supp. 2011), he should not have been found in contempt. However, the divorce decree provides: “Child support shall be due no later than the first (1st) of the [m]onth beginning December 1, 2005.”
¶ 12. John admits in his own brief he was frequently late in making his monthly child-support payments. John even offered testimony regarding at least three different months in which he paid child support and insurance premiums after the first of the month. This was also evidenced by the numerous letters from Patricia’s attorney demanding that John become current on his support obligations. John erroneously assumes the chancery court’s order contained a provision that allowed him to become thirty days delinquent in his monthly payments before his payments were considered late.
¶ 13. Because the chancery court acknowledged that John attempted to purge himself of his contempt by bringing his child-support payments and medical-insurance premiums up-to-date, John claims the chancery court erred by finding him in contempt. However, the chancery court’s finding was not based solely on John’s repeated failure to make timely payments, but also on the $5 charge per payment deducted by the chancery court before forwarding the payments to Patricia. These charges total $135, which still remain unpaid. The chancery court ruled that until John pays this amount in full, his child-support obligation is still in arrears, and he cannot fully purge himself of his contempt. Based on these facts, substantial evidence exists to support the chancellor’s finding. Accordingly, this issue is without merit.
III. Basis for Increase in John’s Child-Support Obligation
¶ 14. “[I]n cases involving child support, we afford the chancellor considerable discretion, and his findings will not be reversed unless he was manifestly in error or abused his discretion.” Sturdavant v. Sturdavant, 53 So.3d 838, 843-44 (¶ 18) (Miss.Ct.App.2011) (quoting Sessums v. Vance, 12 So.3d 1146, 1147 (¶ 3) (Miss.Ct.App.2009)). Child-support modification is warranted if there has been “a substantial or material change in the circumstances of one or more of the interested parties.” Id. at 843 (¶ 15) (quoting Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss.1991)).
¶ 15. John contends the chancery court abused its discretion by increasing his child-support obligation, as there was no basis for the increase. He argues the child-support modification was based on speculative testimony from Patricia. At the hearing, Patricia asserted John makes more money than he reports and that John’s current wife is independently wealthy. However, the chancellor made it clear that the child-support modification was due to the increased needs of the children. At the time of the divorce, both parties anticipated the children would spend considerably more time with John in the future than they had spent with him immediately following the parties’ separation. The chancery court reasoned this change required Patricia to bear most of the cost of feeding, housing, and supporting the children, whereas the divorce decree provided both parties were to split these expenses equally. Also, at the time of the divorce, the children were minors, yet both of the children are now in college and driving. Each of these facts consti *171 tutes a material change in circumstance warranting a modification of John’s child-support obligation. The chancery court did not abuse its discretion in finding a basis for an increase in child support. This issue is without merit.
IV. Patricia’s Contempt of Court
¶ 16. Next, John argues the chancery court erred by failing to find Patricia in contempt of court for interfering with his visitation with the children. In finding Patricia was not in contempt, the chancery court reasoned “there was no proof that [Patricia] in any way interfered with [John’s] right to visit with his children.” The chancery court further stated: “[Patricia] advised that she did not interfere with his visitation, and ... in fact, [John] did not attempt to visit with the children as often as he had the right to do so.”
¶ 17. “[I]n a proceeding for criminal contempt of court[,] the evidence of guilt must be established beyond a reasonable doubt.” Prestwood v. Hambrick, 308 So.2d 82, 84 (Miss.1975) (citing Ferguson v. State ex rel. Biggers, 250 So.2d 634 (Miss.1971)). “The respondent may show by way of defense that failure to comply with a court’s decree was not willful or intentional and without fault on her part.” Id.
¶ 18. Patricia acknowledged that there were several instances in which the children did not want to visit John and that she did not “push the issue.” Patricia also admitted she refused to let their daughter visit John whenever the child was ill. Additionally, when asked on cross-examination whether she had interfered with John’s visitation with the children and violated the chancery court’s order, she answered affirmatively to both questions.
¶ 19. Although John cites the above reasons as proof that Patricia inhibited his visitation with the children, Patricia claims the children did not spend much time at John’s house during the first year following the divorce, and, although the custody schedule allowed John to have custody of the children four weeks during the summer, he only kept them once during this allotted time. Furthermore, Patricia contends that John was out of town a significant amount of time during the past several years, even spending three continuous months in Florida, where his current wife resides. Accordingly, while Patricia admits that she did not insist that their children visit their father, she asserts he never tried to enforce his rights.
¶ 20. In Prestwood, the supreme court found that because the mother made an effort to encourage her child to visit the child’s father, even though the child refused, “[the mother’s] failure to comply with the court’s decree was without fault on her part.” Prestwood, 308 So.2d at 85. The supreme court ruled that considering the mother’s efforts, the evidence did not show beyond a reasonable doubt that she willfully and intentionally refused to comply with the chancery court’s decree. Id.
¶ 21. In Goodson v. Goodson, 816 So.2d 420 (Miss.Ct.App.2002), this Court reiterated the holding in Prestwood. In Goodson, the mother declined to force the child to visit the father against the child’s will. Id. at 423 (¶ 5). The chancery court found the mother was in contempt regardless of whether the child wanted to see her father or not. Id. This Court reversed the chancery court’s ruling by finding that “[because [the mother] tried to make [the child] comply with the visitation order and because the child’s refusal to comply was not [the mother’s] fault, she did not act in willful violation of the [chancery] court’s order.” Id. at (¶ 8).
¶ 22. In the instant case, while Patricia did not force the children to visit their *172 father, she did not interfere with the visitation. The children were thirteen years old at the time of the order setting the visitation schedule; thus, they were capable of expressing their desires regarding visitation with their father. Furthermore, the testimony indicates that John did not readily attempt to enforce his visitation rights. He missed scheduled visitations and left town often. Accordingly, we agree with the chancery court that the actions in this case do not rise to the level of a willful violation of the chancery court’s order. Accordingly, we find this issue is without merit.
V. Attorney’s Fees
¶ 28. John contends the chancery court erred by granting Patricia $10,000 in attorney’s fees. “[T]he matter of determining attorney[’]s fees in divorce eases is largely entrusted to the sound discretion of the trial court.” McKee v. McKee, 418 So.2d 764, 767 (Miss.1982) (citing Walters v. Walters, 388 So.2d 827 (Miss.1980)). When assessing whether the amount of attorney’s fees is appropriate, “a sum sufficient to secure one competent attorney is the criterion by which [courts] are directed.” Id. (citing Rees v. Rees, 188 Miss. 256, 194 So. 750, 751 (1940)). With regard to attorney’s fees, the Mississippi Supreme Court has stated:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
Id. Moreover, the amount of fees assessed “must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary.” Id. Further guidance as to the reasonableness of attorney’s fees is provided by Mississippi Rule of Professional Conduct 1.5(a), which states:
A lawyer’s fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
¶ 24. With regard to contempt actions, Mississippi law is clear that “[w]here a party’s intentional misconduct causes the opposing party to expend time and money needlessly, then attorney[’s] fees and expenses should be awarded to the wronged party.” Mabus v. Mabus, 910 So.2d 486, 489 (¶ 8) (Miss.2005) (quoting State v. Blenden, 748 So.2d 77, 87 (¶ 33) (Miss.1999)). However, even in contempt actions, “[t]he reasonableness of at *173 torney’s fees are controlled by the applicable [Rule] 1.5 factors and the McKee factors.” Mabus, 910 So.2d at 489 (¶ 10) (footnote omitted).
¶ 25. When awarding Patricia attorney’s fees, the chancery court stated:
Although [John] has attempted to purge himself of his contempt by bringing the child support and medical insurance payments current, ... the [c]ourt is going to assess [John] with attorney’s fees incurred by [Patricia]. If not for [John’s] repeated, willful refusal to abide by the orders of this court, [Patricia] would not have incurred the attorney’s fees, which the court finds to be reasonable and [to] meet all of the McKee factors.
There is no indication the chancery court adequately considered the McKee factors when assessing the reasonableness of the attorney’s fees. There was no consideration regarding the parties financial abilities, the novelty and difficulty of the question at issue, or the assessment of the charges.
¶ 26. The case at hand appears to be a routine contempt action. While large awards for attorney’s fees may still be awarded in contempt actions, they are not typical for a routine contempt action. See Mabus, 910 So.2d at 490 (¶ 14). Here, an award of $10,000 appears excessive for a routine contempt action in which only $135 in child support remains unpaid. Furthermore, upon a review of the fees incurred, some charges relate to matters outside of the contempt action, such as modification of child support. Because the attorney’s fees were awarded based on John’s “repeated, willful refusal to abide by the orders of [the chancery court],” fees not related to the contempt action should not have been included in the award amount awarded.
¶ 27. While we acknowledge attorney’s fees may still be appropriate in this case, we find the chancery court should conduct a McKee analysis to assure the award is reasonable and proper. Accordingly, we reverse and remand in part for further proceedings consistent with this opinion.
¶ 28. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
LEE, C.J., GRIFFIS, P.J., ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.