# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01488-COA

**W-T HOLDINGS, LLC D/B/A WINDOW WORLD**                    **APPELLANT**

**v.**

**ROBERT A. GILCHRIST**                                          **APPELLEE**

DATE OF JUDGMENT:                04/24/2018
TRIAL JUDGE:                     HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:       HINDS COUNTY CIRCUIT COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:          CHRISTOPHER J. WELDY
ATTORNEY FOR APPELLEE:           S. CRAIG PANTER
NATURE OF THE CASE:              CIVIL - CONTRACT
DISPOSITION:                     AFFIRMED - 12/17/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### J. WILSON, P.J., FOR THE COURT:

¶1.     This appeal relates solely to an award of attorneys' fees pursuant to a contract. W-T Holdings LLC d/b/a Window World sued Robert Gilchrist for breach of contract after he refused to pay for windows installed at his home. Window World alleged that Gilchrist owed $5,690.35. The case eventually proceeded to trial in county court. The jury found in favor of Window World but awarded damages of only $2,646. Post-trial, Window World sought attorneys' fees under a contract provision that required Gilchrist to "pay all" of Window World's "collection cost, attorney fees and all other expenses related to enforcing" the contract. The county court awarded Window World attorneys' fees of $18,400, although

there was no evidence that Window World had actually incurred or owed that amount.

¶2.     Gilchrist appealed to the circuit court.  He argued, as he had in the county court, that the contract did not require him to pay attorneys' fees in excess of the fees that Window World actually incurred to enforce the contract.  The circuit court agreed with Gilchrist and reversed and rendered the judgment to include only "the actual amount of attorney's fees incurred by Window World" ($1,323).

¶3.     Window World filed a motion for reconsideration along with a new affidavit in which it claimed, for the first time, that it had actually incurred attorneys' fees of $45,175.  The circuit court struck the new affidavit and denied Window World's motion for reconsideration.  Window World then appealed.

¶4.     We hold that the circuit court, sitting as an appellate court, correctly applied the parties' contract to the record on appeal.  Therefore, we affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶5.     The underlying facts of this case are not important to the appeal, as neither party contests the jury's verdict awarding Window World damages of $2,646.[1]  In short, Gilchrist contracted with Window World to install a number of windows at his residence for a contract price of $5,690.35, but Gilchrist was dissatisfied with Window World's work and ultimately refused to pay.  Window World sued Gilchrist in county court for the contract price plus attorneys' fees, other collection costs, and interest.  Gilchrist initially filed a pro se answer

_____

[1] Indeed, the parties did not designate the trial transcript or exhibits as part of the record on appeal.

2

and counterclaim in which he sought, among other relief, $100,000 for alleged harm to his credit and reputation and "mental fatigue." Gilchrist later retained counsel and filed an amended answer and counterclaim. The amended counterclaim sought damages "for the cost of repair and proper installation of [a] picture window" but did not mention mental distress or demand any specific sum as damages.

¶6. The case eventually proceeded to trial, and the jury found in favor of Window World on its claim for breach of contract but awarded damages of only $2,646, or less than half of the amount Window World alleged was owed. The jury also found in favor of Window World on Gilchrist's counterclaim.

¶7. Post-trial, Window World filed a request for attorneys' fees pursuant to a provision in the parties' contract. That provision, which appears in small print in Window World's preprinted standard form contract, states as follows:

Default/Collection Policy
In the event client defaults on Contract, they will be responsible to pay all collection cost, attorney fees, court cost, and all other expenses related to enforcing W-T Holdings LLC, DBA Window World of Mobile/Gulfport terms of agreement/contract to the [sic] permitted by law. 1.5% will be added on monthly.

¶8. In support of Window World's request for attorneys' fees, its lawyer (Weldy) submitted an affidavit with timesheets. Weldy itemized 137.25 hours of work between 2013 and 2015, for which he requested fees of $27,450. Weldy also submitted a timesheet for a recent law school graduate (Riley) who had assisted Weldy with trial preparation and the trial, although she was not yet admitted to the bar. Riley's timesheet itemized 72.5 hours in August and September 2015, for which Window World requested fees of $10,875. Weldy's

3

affidavit further stated:

> 8.　　The fees charged for services in this matter are reasonable.  They are based on an hourly rate of $150 per hour for a law school honors graduate with extensive trial practice experience and $200 per hour for a partner. . . .
>
> . . . .
>
> 10.　　The fees herein are by the hour and attached as **Exhibits B and C** are the timesheets for work performed in this case.

¶9.　　Although Weldy's affidavit referred to "fees charged for services," the affidavit as a whole was ambiguous as to whether Window World actually was billed for or owed those "fees."[2]  Window World also submitted an affidavit from its owner, Henry Santelices, that stated that it had "incurred collection costs, court costs, and other expenses related to enforcing the terms of the contract in the amount of **$2,040.99**."  Santelices itemized those costs, but he did not mention any attorneys' fees that Window World had paid or owed.

¶10.　　In response to Window World's request for attorneys' fees, Gilchrist highlighted the apparent ambiguity in Window World's affidavits and pointedly questioned whether Window World had actually incurred the requested fees.  Gilchrist argued:

> [N]either of the Affidavits submitted by Window World reveal the amount of fees *Window World* actually incurred with its attorney.
>
> To be sure, we have a detailed record of the lawyer's time sheets, but that alone does not tell us that the *client* (Window World) actually paid those (or owes those by contract with its attorney).  While the Attorney's Fee

---

[2] Weldy referred to the timesheets as "billing statements," but there is nothing to indicate that they were ever submitted to Window World for payment or that Window World actually owed the amounts shown. Window World presented only two statements, one each for Weldy and Riley, summarizing all of their work during the two-plus years that the case was pending.  Window World did not submit any periodic invoices or similar documentation.

Affidavit submitted by Mr. Christopher Weldy includes an itemization of his time, it never ***actually says*** that he charged Window World $38,325 for his services.

Similarly, the Affidavit of Henry Santelices contains a list of his out-of-pocket expenses, but it never reflects that Window World actually paid (or owes) $38,325 to Mr. Weldy for having obtained a jury verdict in the amount of $2646. . . .

As a result, both Affidavits are insufficient to establish what Window World has paid to (or owes to) its attorney.

Logic and law tells us that before Window World can ask to be ***reimbursed*** for its reasonable attorney's fees, it must tell the Court what those fees actually were.

¶11.    In its rebuttal in support of its request for attorneys' fees, Window World responded to Gilchrist's argument.  However, Window World did *not* claim that it had actually paid or owed the amounts reflected in Weldy's timesheets.  Rather, Window World argued:

The issue regarding fees is whether they are reasonable, not how much the client actually paid.  Regardless, counsel for Window World is producing its contingency fee contract as **Exhibit A**.  Counsel for Window World pursued this claim with no money being paid up front by Window World, and then had to defend Window World against a [counter]claim for $100,000.[3]  Typically where the fee is contingent, courts have awarded a multiplier to counsel for taking the risk associated with a contingent fee matter. . . .  Since $100,000 was initially at stake for Window World, and the contingent contract provides for attorney's fees at 50%, Window World would be entitled to $50,000 in attorney's fees . . . .

. . . .

If Defendant wants to argue that counsel's hourly fees amount is unreasonable, Window World is amenable to an award of $50,000 or whatever multiple of $50,000 the court deems reasonable.

"Exhibit A" was a signed "Contingency Fee Contract for Legal Services" between Window

---

[3] This is a reference to the demand in Gilchrist's original pro se counterclaim.

5

World and Weldy. The agreement provided that if the case went to trial, Window World would pay Weldy "Fifty Percent (50%) of any sums recovered." Near the end of its rebuttal memorandum, Window World expressly argued: "The fee is contingent in this matter, which supports an award of fees above the standard hourly fees requested."

¶12. The county court held a hearing on Window World's request for attorneys' fees. Weldy argued in support of the request, but he still did not clarify what fees Window World actually had paid or owed. Gilchrist's attorney began his argument in response as follows:

> Right out of the gate I have to ask for a clarification from my counsel opposite. He said those fees that he is seeking were billed. It was not my impression from anything that was filed that his client was actually billed for those fees and owes them. If I'm mistaken, I would like to know that since what he has given us is a contingency fee contract, not an hourly rate contract. All right, I guess we are not going to get an answer to that.

Gilchrist further argued, "This contract between Window World and its lawyer is a contingency fee contract, so the hourly rate is not what Window World owes, it's not what Window World was billed." Gilchrist maintained that he could only be held liable for Window World's actual attorneys' fees.

¶13. Weldy returned to the podium for rebuttal but did not provide any clarification. Rather, he argued that the court should award at least twice the attorneys' fees that he had requested because he "took [the case] on a contingency fee basis":

> Your Honor, . . . the attorney's fees paid by Window World is irrelevant. In cases like this that have been taken on a contingency fee contract, I cited a case, [*Forbush v. J.C. Penney Co.*, 98 F.3d 817 (5th Cir. 1996)]. In that case the court found that a multiplier of two was reasonable when an attorney took a case under a contingency fee contract.
>
> So even looking at my total fees and applying a multiplier of two to that would

6

be reasonable. Because I took it on a contingency fee basis, I was paid nothing up front. This is all risk I incurred on my end pushing this case to a jury trial because the defendant won't even make any offer of judgment in this case.

¶14. The court announced its ruling from the bench and subsequently entered a written order, but neither the oral ruling nor the written order provided any analysis or explanation. The court simply awarded $23,400 for attorneys' fees—$18,400 for Weldy's work and an additional $5,000 for Riley's work. The court also awarded costs and expenses in the amount of $2,040.99 based on Santelices's affidavit. Gilchrist appealed to circuit court.

¶15. In the circuit court, Gilchrist continued to argue that Window World was entitled to recover no more than the attorneys' fees that it had actually incurred under its agreement with Weldy—i.e., fifty percent of the jury verdict, or $1,323. Gilchrist emphasized that there was nothing in the record to indicate that Window World had paid or owed the amounts shown in Weldy's timesheets.

¶16. Window World's response brief in the circuit court did not dispute Gilchrist's characterization of the record or the amount of fees that it had actually incurred. Instead, Window World simply asserted that the county court's award was "reasonable" and not an "abuse of discretion."

¶17. The circuit court reversed the county court and rendered an amended judgment, holding as follows:

> [T]he attorney fee submissions by [Window World] were not based on the actual amount of the services . . . . As a result, the Court finds that . . . the post-verdict award of fees and costs made by the trial court without any explanation of the accounting is not supported by the evidence. Accordingly, the Court hereby reverses the county court's judgment and hereby renders it to include $2,646 for the jury verdict which is not challenged on appeal; the

7

actual amount of attorney's fees incurred by Window World as a result of the 50% attorney fees agreement; and reasonable costs and expenses as detailed in the affidavit of Window World owner, Henry Santelices.

¶18.   Window World filed a motion for reconsideration in which it argued: "Although whether or not Window World 'incurred' said fees is immaterial . . . , Window World did in fact incur said fees."  In support of this new claim, Window World attached a *new* affidavit from Santelices.  Santelices's new affidavit stated in part:

> 3.   As a result of Mr. Gilchrist's breach/default on our contract, I had to hire an attorney and institute this legal action, and as of today's date have incurred attorney's fees related to enforcing the terms of the contract in the amount of **$45,175.00**.

> 4.   Once Mr. Gilchrist filed a counterclaim for $100,000, demanded a jury trial, and it became apparent this litigation would be more than a simple collection matter, I and Attorney Weldy agreed that the case would proceed on an hourly fee agreement, as it would have been unreasonable for Attorney Weldy to expend such time and effort litigating this case over several years and ultimately trying the case in front of a jury for a percentage of $5,690.35.

¶19.   Gilchrist filed a motion to strike Santelices's affidavit.  Gilchrist argued that the affidavit was improper because (1) the appeal was "on the record" made in the county court and (2) Santelices's new claim that he had agreed to pay Weldy on an hourly basis was contrary to Window World's repeated representations in the county court.  As Gilchrist noted, Window World had argued before the county court that its fee award should be increased *because* Weldy took the case on a contingency basis.  Gilchrist's motion to strike concluded: "Window World told the County Court, again and again, that the fee arrangement was contingent.  Now, for the first time, Window World claims the arrangement was hourly. It is too late in the day for that."

8

¶20. Window World's reply in support of its motion for reconsideration only added to the confusion. Window World argued:

> [Gilchrist's] either/or proposition concerning the attorney fee agreement between counsel and Window World is a red herring. *An hourly fee agreement can be contingent on the outcome of the case as in this situation.* [Gilchrist] further makes much ado of what is in the record or lacking concerning the agreement between counsel and client. Again, the standard is reasonableness. Following that standard avoids the inquisition into the relationship between attorney and client that [Gilchrist] wants to pursue.

(Emphasis added). Thus, whereas Santelices's affidavit appeared to make a new claim that Window World had at some point agreed to pay Weldy a standard hourly rate, Window World's reply seemed to say that its "hourly fee agreement" was still "contingent on the outcome of the case." Window World did not explain the nature or operation of the supposed contingency. Nor has Window World ever produced a written fee agreement to support this new assertion.[4]

¶21. The circuit court granted Gilchrist's motion to strike and denied Window World's motion for reconsideration. The court held that Santelices's affidavit was improper because the appeal was solely on the record made in the county court. The court also noted that this was the "first mention" of any claim that Window World and Weldy had converted their contingency fee contract to an hourly rate agreement. Window World appealed.

**ANALYSIS**

¶22. Window World raises five issues in its appeal to this Court, which we quote here verbatim but reorder for purposes of discussion:

---

[4] "A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined . . . ." M.R.P.C. 1.5(c).

1.     The Circuit Court erred by applying a de novo standard of review instead of an abuse of discretion standard of review.

2.     The Circuit Court erred by applying the law on open accounts to a breach of contract case.

3.     The Circuit Court erred by striking the affidavit of Henry Santelices after it decided to review the matter de novo without a hearing.

4.     The County Court did not abuse its discretion in awarding attorney's fees.

5.     The Circuit Court erred by failing to take into consideration the fact that Window World defeated a $100,000 counterclaim when determining attorney's fees.

¶23. It is unnecessary to address first two issues due to the procedural posture of this appeal. As a practical matter, "[t]he present appeal is primarily from the ruling of the [county court] rather than from the circuit court, which court had the role of an intermediate appellate court in the present case." *Old Canton Hills Homeowners Ass'n v. Mayor & City Council of City of Jackson*, 749 So. 2d 54, 62 (¶21) (Miss. 1999) (appeal from a city council decision). Therefore, any alleged errors in the circuit court's legal analysis "should not, in any way, impact this Court's analysis of whether or not the [county court erred] in the present case." *Id.* In other words, this Court reviews the decision of the county court without any deference to the analysis of the circuit court.

¶24. As to the third issue, we hold that the circuit court did not err by striking the new affidavit of Henry Santelices. An appeal from county court to circuit court must be decided "solely upon the record as made in the county court." Miss. Code Ann. § 11-51-79 (Rev. 2019); *accord* UCRCCC 5.01. New evidence cannot be offered on appeal. *Peebles v. Miles*,

10

189 Miss. 623, 198 So. 29, 31 (1940) (holding that testimony offered in the circuit court on appeal "was wholly incompetent" because "the appeal was to be considered solely upon the record as made in the county court"); *see also, e.g.*, *State v. Cummings*, 203 Miss. 583, 591, 35 So. 2d 636, 639 (1948) ("Being an appellate court, we take the record as it comes to us, and receive no new evidence here."); *Abercrombie v. Abercrombie*, 193 So. 3d 680, 683 (¶9) (Miss. Ct. App. 2016) ("[W]e will not consider new evidence on appeal."). Therefore, the circuit court properly struck and refused to consider the new affidavit.

¶25.     We now address the award of attorneys' fees, which encompasses Window World's fourth and fifth issues quoted above. The only basis for an award of attorneys' fees in this case is the parties' contract. Therefore, attorneys' fees are recoverable only to the extent that they are permitted by the language of the contract. *See, e.g.*, *Hamilton v. Hopkins*, 834 So. 2d 695, 699-700 (¶¶12-17) (Miss. 2003). We review issues of contract interpretation and construction de novo. *Keesler Fed. Credit Union v. Saucier*, 248 So. 3d 920, 921 (¶4) (Miss. Ct. App. 2018) (citing *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶16) (Miss. 2012)).

¶26.     If the parties' contract is unambiguous, "it must be enforced as written." *Epperson*, 93 So. 3d at 16 (¶17). As stated above, the relevant provision in this case states:

> Default/Collection Policy
> In the event client defaults on Contract, they will be responsible to pay all collection cost, attorney fees, court cost, and all other expenses related to enforcing W-T Holdings LLC, DBA Window World of Mobile/Gulfport terms of agreement/contract to the [sic] permitted by law.  1.5% will be added on monthly.

The parties disagree regarding the meaning of this provision, but "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract

11

ambiguous as a matter of law." *Id.* at (¶18) (quoting *Delta Pride Catfish Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997)). Gilchrist argues that the provision permits Window World to recover only attorneys' fees and other collection costs that it *actually* incurs to enforce the contract. Window World, on the other hand, argues that it is entitled to recover "reasonable" attorneys' fees based on the hours and hourly rates claimed by its attorney and his law clerk—regardless of whether it actually paid or owes those amounts.[5]

¶27. We hold that the relevant provision of the parties' contract permits Window World to recover only the actual attorneys' fees that it incurred to enforce the contract. Nothing in the language of the provision suggests that it imposes liability on the customer for nonexistent "fees" that Window World never actually incurred or owed to anyone. We "must accept the plain meaning of a contract as the intent of the parties," *id.* at (¶17) (quotation marks omitted), and the plain meaning of this contract is that it requires the customer to reimburse Window World for its actual costs of collection, including the reasonable attorneys' fees that it *actually* incurred.[6]

¶28. Our holding is buttressed by the canon of contract construction that any ambiguity in

---

[5] As noted above, in the lower courts, Window World expressly argued that its actual attorneys' fees were "irrelevant."

[6] We also reject Window World's argument (the final issue listed above in ¶22) that the circuit court erred by not considering Gilchrist's "$100,000 counterclaim." Window World argues that it should recover attorneys' fees of $50,000 based on its fifty percent contingency fee agreement with Weldy, its success on the counterclaim, and Gilchrist's initial (pro se) demand for $100,000. However, Window World's agreement with Weldy did not provide for any such "reverse contingency fee," and there is no evidence that Window World incurred $50,000 in attorneys' fees. Moreover, Window World's contract with Gilchrist did not require Gilchrist to pay attorneys' fees related to such a counterclaim.

a contract "must be strongly construed against the drafting party." *Woodruff v. Thames*, 143 So. 3d 546, 554 (¶20) (Miss. 2014) (quotation marks omitted). Stated differently, when the language of a "contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party." *Epperson*, 93 So. 3d at 17 (¶19) (quoting *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 753 (¶11) (Miss. 2003)). The one-sided provision at issue in this case—which does not permit any award of fees to a customer—is found in the small print of Window World's preprinted form contract. Therefore, even if the provision were subject to "more than one fair reading," *id.*, we would be bound to interpret it in favor of Gilchrist and against Window World. Gilchrist's interpretation of the provision is, at the very least, a "fair reading" of it.[7]

¶29. Having determined the meaning of the parties' contract, we now review "the record as made in the county court." Miss. Code Ann. § 11-51-79. We do so to determine what evidence Window World presented of the attorneys' fees that it had actually incurred. The

---

[7] We note that two cases cited by the dissent, *post* at ¶48, do not compel a different result. *McCain v. Memphis Hardwood Flooring Co.*, 725 So. 2d 788 (Miss. 1998), *overruled on other grounds by Stockstill v. Gammill*, 943 So. 2d 35 (Miss. 2006), did not involve a contractual right to attorneys' fees. Rather, it involved a remedial statute that not only provided for double damages for the wrongful cutting of trees but also stated: "All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court." Miss. Code Ann. § 95-5-10 (Rev. 2018). The Supreme Court simply held that a contingency fee agreement did not limit the trial court's discretion to award "reasonable . . . attorney's fees" under that remedial statute. *McCain*, 725 So. 2d at 795-96 (¶¶28-32). In addition, in *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259 (Miss. 1999), the Supreme Court simply held that the chancellor did not abuse her discretion "when she found that the attorney fee award in [that] case . . . should not be *enhanced* due to the contingent nature of the contract between [the plaintiff] and its attorney." *Id.* at 272 (¶39) (emphasis added). The Court did not state that the chancellor's award could or should exceed the plaintiff's actual attorneys' fees.

only such proof is the contingency fee agreement between Window World and Weldy, which required Window World to pay Weldy fifty percent "of any sums recovered" at trial—i.e., $1,323. In the county court, Window World did not offer any evidence or even allege that it had actually incurred the larger amounts claimed in Weldy's timesheets. When Gilchrist raised this issue specifically, Window World responded that its actual attorneys' fees were "irrelevant" and that its attorney had taken the case on a contingency fee basis. If Window World had actually incurred the fees that it requested, then it should have offered evidence of that fact in the county court. Window World had every opportunity to offer such evidence, but it failed to do so. Given the absence of such evidence, the county court erred as a matter of law by awarding nonexistent "fees" that were not authorized by the parties' contract.[8] Based on the parties' contract and the record in the county court, the circuit court correctly ruled that Window World was entitled to recover attorneys' fees equal to fifty percent of the jury verdict, i.e., $1,323.

**CONCLUSION**

¶30. The parties' contract requires Gilchrist to reimburse Window World only for the attorneys' fees that Window World actually incurred to enforce the parties' contract. In the county court, Window World did not offer evidence that it actually incurred attorneys' fees in excess of fifty percent of the jury verdict (i.e., $1,323). Therefore, the judgment of the circuit court is **AFFIRMED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD,**

---

[8] *See Hamilton*, 834 So. 2d at 700 (¶17) (holding that "the chancellor erred as a matter of law in awarding attorney's fees" that were "not authorized by the [parties'] contract").

**LAWRENCE AND C. WILSON, JJ., CONCUR. CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McCARTY, J.**

**CARLTON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶31. I respectfully concur in part and dissent in part from the majority's decision affirming the circuit court. I agree with the majority that the circuit court did not err by striking the new affidavit of Santelices. However, I would reverse, render, and remand the circuit court's award of attorneys' fees and costs and expenses. The county court's judgment reflects that Window World "incurred" reasonable attorneys' fees and costs and expenses totaling $28,086.99. Upon review, I find that the county court erred in awarding attorneys' fees for the cost of defending against Gilchrist's counterclaim.

**FACTS**

¶32. Window World filed its complaint in the Hinds County County Court seeking to recover $5,690.35 in damages from Gilchrist's breach of the contract. On December 5, 2013, Gilchrist filed his answer and counterclaim for $100,000 in damages, claiming mental anguish, damage to his credit rating and reputation, and attorneys' fees. After written discovery and depositions, Gilchrist amended his answer and counterclaim, requesting an undisclosed amount to repair and properly install the picture window.[9]

¶33. After a trial in the county court, the jury returned a verdict in favor of Window World and awarded Window World $2,646 in damages.

---

[9] In his amended counterclaim, Gilchrist requested a "judgment against . . . Window World for the cost of repair and proper installation of the picture window, his attorney fees and cost[s] of suit, and all other relief as he may be legally entitled to, in an amount to be determined at trial."

¶34. The county court judge recognized that the contract at issue contained a provision allowing for the recovery of attorneys' fees, costs and expenses, and interest. On October 15, 2015, the county court judge held a hearing on the matter of attorneys' fees and costs. At the hearing on the issue of attorneys' fees, Window World submitted the following documents into evidence: (1) the "Contingency Fee Contract for Legal Services" (contingency fee agreement), which Windows World entered into with Weldy Law Firm on September 13, 2013. The contract set forth that "this employment is upon a contingency basis, whereby the client agrees to set over, assign, and pay out of any recovery in this case a percentage of the sums recovered to Weldy Law Firm[] PLLC." The contract also provided that "[t]he contingency fee agreed upon for this representation shall be calculated upon the gross cash sums recovered (after first deducting expenses as provided in paragraph 4 below), and shall equal the amount of . . . Fifty Percent (50%) of any sums recovered upon mediation and/or Pre-Trial Conference.[10]"; (2) an attorney's fee affidavit indicating that Christopher Weldy's fee for working on the case was $27,450, and the fee for work by Caitlin Riley, a law school graduate who had not yet passed the bar exam, totaled $10,875; (3) the affidavit of attorney Robert Wilkins stating that "the rates and total of the fees charged for services in this matter are reasonable. They are based on an hourly rate of $150 per hour for a law

---

[10] Paragraph four of the contingency fee agreement states: "All reasonable and necessary expenses incurred in connection with this contract, including but not limited to, filing fees, service of process fees, professional evaluation fees, expert witness fees, records fees, court reporter expenses, investigation expenses, photographs, photo-reproduction expense, long-distance telephone expenses, facsimile, postings and express mail expenses and similar reasonable expenses in association with the client's case shall be reimbursed to Weldy Law Firm[] PLLC and paid out of any recovery prior to the calculation of fees as set forth above."

16

school honors graduate with extensive trial practice experience and $200 per hour for a partner. This is comparable to or lower than the rates for similar services offered in the metro Jackson area."; (4) an affidavit of Santelices, the owner of Window World, attesting to the costs incurred in this matter. Santelices set forth that the total of the costs and expenses incurred, which are also allowed under the contract, is $2,040.99. The affidavit went on to say that the contract also called for interest at the rate of 1.5% per month.

¶35. At the hearing, Gilchrist argued that Window World's attorneys' fees award should be limited to a percentage of its recovery, as stipulated to in the contingency fee agreement. Window World argued that the present matter was a breach of contract case, and the contract between it and Gilchrist allowed for the prevailing party to recover attorneys' fees. Window World therefore maintained that the only question before the county court was whether Window World's requested attorneys' fees were reasonable. Window World cited to Mississippi Code Annotated section 9-1-41 (Rev. 2014), which provides:

> In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

¶36. The county court entered a final judgment acknowledging the jury's verdict against Gilchrist and the award of damages to Window World in the amount of $2,646. The county court also determined that Window World incurred reasonable attorneys' fees and costs and

expenses, totaling $25,440.99,[11] together with post-judgment interest starting on November 3, 2015 at the rate of 1.5% per month. Gilchrist appealed this judgment to the circuit court.

¶37.	The circuit court reversed the county court's judgment in part. More specifically, the circuit court affirmed the jury's verdict of damages in the amount of $2,646, but it reversed and rendered the amount of attorneys' fees and costs and expenses. In its judgment, the circuit court set forth that "the sole issue on appeal is whether the award of attorney[s'] fees made by the trial court and costs was consistent with the terms of the contract and applicable contract law and whether the award was reasonable." The circuit court found that the county court's award of attorneys' fees differed from the amount of fees requested by Window World, and the record lacked detail as to the specific proof needed to support the county court's award. The circuit court quoted *Key Constructors Inc. v. H & M Gas Co.*, 537 So. 2d 1318, 1325 (Miss. 1989), for the principle that "[t]he court may not judicially note what is a reasonable fee and it certainly may not merely pull a figure out of thin air. Rather, the party entitled to recover a reasonable fee must furnish an evidentiary predicate therefor."[12] The circuit court quoted *Key Constructors* for the principle that "[w]hen considering the reasonableness of attorney[s'] fees in a contractual collection account, Mississippi law has

[11] Specifically, the county court found that Window World incurred reasonable attorneys' fees in the amount of $18,400 for Weldy; $5,000 for Riley; and $2,040.99 in other costs and expenses.

[12] The facts of *Key Constructors* are distinguishable from the facts of the case before us. In *Key*, the supreme court found that there was no evidence in the record showing the nature and extent of the legal services, nor was there proof of the reasonableness of the . . . award." *Id*. In the present case, Window World presented numerous exhibits in support of its attorneys' fee affidavit.

18

established the rebuttable presumption that 'that an award of one-third the amount of the indebtedness in collection matters is reasonable.'"

¶38.   The circuit court determined that Window World's attorneys' fee submissions "were not based on the actual amount of the services, and the rate used and time expended was well in excess of a reasonable fee customarily charged for similar small contractual cases involving a minor collection dispute." Consequently, the circuit court decided that Window World should receive an attorneys' fee award equal to "the actual amount of attorneys' fees incurred by Window World as a result of the 50% contingency agreement." The circuit court also awarded Window World "reasonable costs and expenses as detailed in the affidavit of Window World owner, Henry Santelices."

## STANDARD OF REVIEW

¶39.   When reviewing an appeal of a county court judgment, this Court applies the following standard: "The county court was the fact-finder, and the circuit court, as well as this Court, are bound by the judgment of the county court if supported by substantial evidence and not manifestly wrong." *Bacallao v. Madison Cty.*, 269 So. 3d 139, 144 (¶21) (Miss. Ct. App. 2018).

## DISCUSSION

### I.   Abuse of Discretion Standard

¶40.   Window World first argues that the circuit court erred by applying a de novo standard when reviewing the county court's award of attorneys' fees. Window World maintains that the circuit court should have instead applied an abuse of discretion standard.

19

¶41. Mississippi Code Annotated section 11-51-79 (Rev. 2019) sets forth that "[a]ppeals [from county court to circuit court] should be considered solely upon the record as made in the county court. . . ." Additionally, Uniform Civil Rule of Circuit and County Court 5.01 provides that "all cases appealed to circuit court shall be on the record and *not* a trial de novo." (Emphasis added). The Mississippi Supreme Court has confirmed that an appellate court "reviews a trial judge's award of attorney's fees for abuse of discretion." *T. Jackson Lyons & Assocs. P.A. v. Precious T. Martin Sr. & Assocs. PLLC*, 87 So. 3d 444, 448 (¶10) (Miss. 2012).

¶42. In the present case, the circuit court's judgment set forth that

> this [c]ourt must conduct a de novo review of the decision of the trial court regarding its award of attorney fees and prejudgment interest, due to the lack of detail provided as to the specific proof to support the trial court's fee award amount, which differed than the amount requested by [Window World].

In *Mark S. Bounds Realty Partners Inc. v. Lawrence*, 34 So. 3d 1224, 1227 (¶8) (Miss. Ct. App. 2010), this Court addressed a similar issue and clarified that the proper standard of review for such matters is the abuse-of-discretion standard. In *Bounds*, the appellant argued that the trial court failed to make on-the-record findings and therefore this Court should review the trial court's award of attorney's fees de novo. *Id*. at (¶7). However, this Court stated that

> [a]lthough findings of fact would have been helpful to this Court in resolving this appeal, explicit findings of fact are not always required from a [trial court] when the underlying case is not significantly complex. When such is the case and the [trial court] has failed to make explicit findings of fact, "this Court proceeds upon the 'assumption that the [trial court] resolved all such fact issues in favor of the appellee' or as a minimum, in a manner which would be in line with the decree."

20

*Id*. at (¶8) (citations omitted). This Court also emphasized that "neither party requested findings of fact from the [trial court] pursuant to Rule 52(a) of the Mississippi Rules of Civil Procedure" and also determined that the "case [was] not one of significant complexity." *Id*. This Court accordingly stated that it would review the trial court's order awarding attorneys' fees under an abuse-of-discretion standard. *Id*.

¶43.    As stated, in its judgment, the circuit court set forth that it must review the county court's award of attorneys' fees de novo. In applying precedent to the facts at hand, I find that the circuit court erred in reviewing de novo the county court's award of attorneys' fees. Instead, the circuit court should have utilized an abuse-of-discretion standard when reviewing the county court's award of attorneys' fees. The analysis that follows will proceed under the correct standard of review. *See Adams v. Graceland Care Ctr. of Oxford LLC*, 208 So. 3d 575, 580 (¶12) (Miss. 2017).

## II.    Award of Attorneys' Fees

¶44.    Window World argues that the circuit court erred in reversing and rendering the county court's award of attorneys' fees after the circuit court found that award to be "legally deficient and unreasonable." Window World also asserts that the circuit court failed to consider Gilchrist's initial counterclaim seeking the amount of $100,000 when reversing and rendering the county court's award of attorneys' fees. Gilchrist, however, maintains that Window World and the Weldy Law Firm entered into a contingency fee agreement, and as a result, the circuit court correctly rendered an award of attorneys' fees that reflected the terms of the contingency fee agreement.

21

¶45.	The circuit court found that the county court failed to provide any explanation for its award of attorneys' fees. The circuit court accordingly reversed the county court's award of $23,400 in attorneys' fees and rendered an amount equal to "the actual amount of attorneys' fees incurred by Window World as a result of the 50% contingency agreement," which is $1,323, as well as reasonable costs and expenses as detailed in Santelices's first affidavit.

¶46.	As discussed above, this Court reviews a trial court's award of attorneys' fees for an abuse of discretion. *Lyons*, 87 So. 3d at 452 (¶28). An award of attorneys' fees "must be reasonable and supported by credible evidence." *Id*. "When a trial court makes . . . attorney[s'] fees awards, it should do so with caution and clarity." *BellSouth Pers. Commc'ns LLC v. Bd. of Sup'rs of Hinds Cty.*, 912 So. 2d 436, 448 (¶38) (Miss. 2005).

¶47.	The supreme court has established that "[t]he reasonableness of attorney[s'] fees is governed by Rule 1.5(a) of the Mississippi Rules of Professional Conduct and these guidelines are unambiguous." *BellSouth*, 912 So. 2d at 445 (¶31). The factors set forth in Rule 1.5(a) are also known as the *McKee* factors.[13] *Id*. at 446 (¶31). These factors require as follows:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the

---

[13] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

services; and (8) whether the fee is fixed or contingent.

*Id.* at 445-46 (¶31) (quoting Miss. R. Prof. Conduct 1.5(a)). The supreme court has adopted the "lodestar" method of calculating reasonable attorney's fees: "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services[.]" *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 271 (¶36) (Miss. 1999) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).[14] "[T]rial court judges must follow the appropriate procedure and make the requisite findings of fact necessary to insure a losing litigant is only made to compensate his adversary for fees and expenses which were reasonably incurred." *BellSouth*, 912 So. 2d at 448 (¶39).

¶48. Additionally, in cases where a statute authorizes a court to grant reasonable attorneys' fees, the supreme court has held that a contingency fee agreement does not control the trial court's exercise of discretion; rather, the agreement should be used to aid the court in determining reasonable attorneys' fees. *McCain v. Memphis Hardwood Flooring Co.*, 725 So. 2d 788, 796 (¶32) (Miss. 1998), *overruled on other grounds by Stockstill v. Gammill*, 943

---

[14] *Cf. Jack Cole-Dixie Highway Co. v. Red Ball Motor Freight Inc.*, 254 So. 2d 734, 741 (Miss. 1971). In *Jack Cole-Dixie Highway*, the supreme court held that because the case was handled strictly on a contingent fee contract basis, the attorneys were entitled to recover only that percentage of the amount recovered as was agreed upon. *Id.* The supreme court reasoned that "[i]t would be a mistake, in cases handled upon a contingent fee contract basis, to allow an attorney to recover not only the amount agreed upon with his client under the employment contract but also an additional amount based upon the value of a services actually necessary to the recovery." *Id.* However, this case preceded the supreme court's recognition of the lodestar method adopted by the United States Supreme Court.

23

So. 2d 35, 49 (¶28) (Miss. 2006); *see also* 1 Jeffrey Jackson, Mary Miller & Donald Campbell, *Encyclopedia of Mississippi Law* § 8:2 n.1 (2d ed. Oct. 2019). In *Mauck*, 741 So. 2d at 271 (¶36), the supreme court held that a chancellor did not abuse her discretion in awarding attorneys' fees based on an hourly rate rather than a contingent fee. The supreme court found that in determining the attorneys' fees award, the chancellor considered the factors set forth in Rule 1.5. *Id.* The supreme court determined that the chancellor's order reflected her finding that although the parties entered into a continency fee agreement, "this was not a controlling factor. . . ." *Id.* at (¶37). The chancellor had explained that "what is controlling is what is reasonable." *Id.*

¶49. In the present case, the record reflects that the county court judge held a hearing on the issue of attorneys' fees, costs, and expenses. Both parties submitted briefs in support of their arguments and addressed the factors set forth in Rule 1.5(a). Window World submitted proof that it incurred approximately $38,325 in attorney's fees. In support of this amount, Window World submitted the following evidence: an attorneys' fee affidavit, which included: (1) the billing statements from the Weldy Law Firm; (2) an itemized statement of hours that Weldy spent working on the case which totaled $27,450; and (3) the billing statement of Weldy's associate, Riley, which totaled $10,875. Window World also submitted its contingency fee agreement with the Weldy Law Firm. As previously stated, this contract set forth that "this employment is upon a contingency basis, whereby the client agrees to set over, assign, and pay out of any recovery in this case a percentage of the sums recovered to Weldy Law Firm[] PLLC." The contract specifically provided that the Weldy Law Firm

would receive fifty percent of any gross cash sums recovered (after first deducting expenses).

¶50. After the hearing, the county court awarded Window World only $23,400 in attorney's fees. The county court's judgment reflects as follows:

> [Window World] incurred reasonable attorney[s'] fees in the amount of $18,400 for [Christopher] Weldy.

> [Window World] incurred reasonable attorney[s'] fees in the amount of $5,000 for [Caitlin] Riley.

Neither the county court's judgment, nor the transcript from the attorneys' fees hearing, reflects that the county court discussed each factor in Rule 1.5(a). Window World argues that although the county court did not specifically go through each factor in the order, the record reflects that the county court still relied on the credible evidence of billing statements and considered the Rule 1.5(a) factors when exercising its discretion as to the reasonableness of the attorneys' fees.

¶51. In *BellSouth*, 912 So. 2d at 446 (¶34), the supreme court stressed "the importance of issuing a complete rule 1.5(a) analysis" and noted that it has referenced "what it expects by way of credible evidence." The supreme court explained that "[t]he *McKee* factors should [be] applied by the trial judge in determining the amount of attorneys' fees to be awarded, and any award should be supported with factual determinations." *Id*. In that case, the supreme court determined that the circuit court abused its discretion in awarding attorney's fees where the court failed to make any substantive findings of fact consistent with Rule 1.5(a) and *McKee* in support of its award. *Id*. at 448 (¶39). The supreme court accordingly vacated the circuit court's order assessing attorney's fees and remanded with instructions for

the court "to make appropriate findings of fact and conclusion of law to support any such award" of attorney's fees. *Id*. at 448 (¶40).

¶52. Similarly, in *Bowen v. Bowen*, 107 So. 3d 166, 172 (¶23) (Miss. Ct. App. 2012), the appellant challenged a chancellor's award of attorneys' fees. On appeal, this Court determined that the record contained "no indication that the chancery court adequately considered the *McKee* factors when assessing the reasonableness of the attorney's fees." *Id*. at 173 (¶25). This Court therefore reversed and remanded in part, with instructions for the chancellor to conduct a *McKee* analysis upon remand to ensure that the award was "reasonable and proper." *Id*. at (¶27).

¶53. After reviewing the record, I find that the county court did not abuse its discretion in its award of attorneys' fees, costs, and expenses to Window World, together with post-judgment interest starting on November 3, 2015, at the rate of 1.5% per month, in accordance with the contract between Gilchrist and Window World.

¶54. However, I find that the county court erred in awarding attorneys' fees for the cost of defending against Gilchrist's counterclaim. The record shows that the contract entered into between Gilchrist and Window World specified that in the event Gilchrist defaults on the contract, Gilchrist "will be responsible to pay all collection cost[s], attorney fees, court cost[s], and all other expenses related to enforcing [Window World's] terms of agreement/contract to the [sic] permitted by law." The contract does not permit recovery of the costs of defending against a counterclaim. I therefore would reverse the circuit court's award and reinstate the county court's award of attorneys' fees, costs, and expenses to

26

Window World, together with post-judgment interest starting on November 3, 2015, at the rate of 1.5% per month. Because I find it necessary for this award to be recalculated in part, I would therefore remand this matter to the circuit court with instructions for it to remand the case to the county court for further proceedings consistent with this opinion. On remand, the county court should then (1) determine the amount of attorneys' fees owed for the costs of collection of the fourteen double-paned windows as provided in the contract between Gilchrist and Window World, and (2) exclude from the calculation of attorneys' fees the costs of defending against Gilchrist's $100,000 counterclaim.

¶55. I therefore respectfully concur in part and dissent in part from the majority's opinion.

**McCARTY, J., JOINS THIS OPINION.**